**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Bobby Gene RICHARDSON,**
**Defendant–Appellant.**

No. 94-5193.

United States Court of Appeals,
Tenth Circuit.

June 6, 1996.

Stuart W. Southerland, of Fransein and Southerland, Tulsa, Oklahoma, for Defendant–Appellant.

Allen J. Litchfield, Assistant United States Attorney (Stephen C. Lewis, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff–Appellee.

Before SEYMOUR, Chief Judge, TACHA and KELLY, Circuit Judges.

SEYMOUR, Chief Judge.

Mr. Bobby Gene Richardson was convicted on eight counts of various drug trafficking offenses, including conspiracy to possess with intent to distribute methamphetamine and cocaine and to distribute cocaine in violation of 21 U.S.C. § 846; distribution of cocaine and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); possession of a firearm after a former conviction of a felony in violation of 18 U.S.C. § 922(g); and maintaining a location for storing and distributing methamphetamine and cocaine in violation of 21 U.S.C. § 856. The court sentenced Mr. Richardson to 168 months imprisonment for the drug offenses followed by 60 months imprisonment for the section 924(c)(1) firearm conviction. Mr. Richardson contends on appeal (1) the search of his home violated the Fourth Amendment; (2) the evidence was insufficient to support his firearm and conspiracy convictions; (3) evidence was erroneously admitted during trial; (4) his conviction violated the Double Jeopardy Clause; and (5) the district court erred in applying the Sentencing Guidelines. For the reasons set forth below, we affirm.

I

In the fall of 1993, Mr. Christopher Gilmartin agreed to assist the Tulsa Police Department and the Tulsa County District Attorney's Office with drug trafficking investigations in exchange for the dismissal of charges against him. To that end, Mr. Gilmartin agreed to set up controlled narcotics buys involving Mr. Richardson, Mr. Darrell Wayne Stone, Police Officer Jeff Cash, and himself. Mr. Gilmartin and Mr. Stone were to act as middlemen between the purchaser, Officer Cash, and the supplier, Mr. Richardson. Agent Debrah Pickering of the Oklahoma Bureau of Narcotics (OBN) also participated in the investigation.

Mr. Gilmartin called Mr. Stone to set up a narcotics transaction near Spoonfork Bridge at 126th Street in North Tulsa. Officer Cash drove Mr. Gilmartin to the meeting place and

gave him $460 to make the purchase. Mr. Gilmartin got into Mr. Stone's truck and gave him the cash. Mr. Stone took the money and informed Mr. Gilmartin that he had to acquire the cocaine from Mr. Richardson. Mr. Stone left and returned with four small bags of cocaine, which he gave to Mr. Gilmartin. Later that evening, Mr. Gilmartin told Mr. Stone that he would get back in touch with him when he was ready to do something else.

Mr. Gilmartin contacted Mr. Stone about two weeks later and arranged to purchase an ounce of cocaine near Mr. Richardson's farm, although the location for the purchase was later changed to Wann Cemetery in Oologah, Oklahoma. Officer Cash drove Mr. Gilmartin to the cemetery and gave him $1600 in marked bills to make the second purchase. Mr. Gilmartin gave the cash to Mr. Stone, who again took the money, drove away, and returned in approximately fifteen minutes with an ounce of cocaine. Surveillance officers observed Mr. Stone enter Mr. Richardson's driveway after Mr. Stone received the cash and before he returned to the cemetery.

Officer Cash then obtained a search warrant for Mr. Richardson's residence. He described the controlled buys in the affidavit and stated that Mr. Gilmartin named both Mr. Stone and Mr. Richardson as participants. Officer Cash also stated that other officers observed Mr. Stone enter Mr. Richardson's driveway immediately after receiving cash from Mr. Gilmartin.

Mr. Gilmartin contacted Mr. Stone the next day and arranged to purchase a pound of cocaine at Mr. Richardson's farm. Mr. Stone did not show up at the prearranged time, however, because Mr. Richardson had observed one of the surveillance officers while he was driving and had informed Mr. Stone.

Shortly after the failed purchase, Officer Cash, Agent Pickering, and other officers proceeded in six cars to Mr. Richardson's residence to execute the search warrant. On the way, the officers observed Mr. Richardson driving toward them and one of them blocked the roadway by placing his unmarked car sideways. Two officers wearing raid jackets and displaying their badges waived for Mr. Richardson to stop. Mr. Richardson drove onto the shoulder of the roadway and past the officers, but stopped about thirty feet thereafter. One officer saw Mr. Richardson reaching down but could not see what he was reaching for.

Mr. Richardson was arrested and a "pat down" revealed a loaded .22 caliber derringer in his left rear pocket. Another gun, a .22 caliber Ithaca rifle, was recovered from the front seat of Mr. Richardson's truck. Two notebooks were found in the truck, one of which contained a list of precursor chemicals used in the manufacture of methamphetamine. Approximately one pound of cocaine and a half-pound of methamphetamine were found in Mr. Richardson's tool shed, which was located near his residence. In addition, officers recovered from the tool shed $1540 of the marked money from the last controlled buy, large digital scales, and gallon-size ziplock bags with narcotics residue.

Mr. Richardson's motion to suppress the evidence was denied by the district court. After a trial, he was convicted on all counts.

## II

Mr. Richardson raises several challenges under the Fourth Amendment. We review the factual findings in support of a district court's denial of a motion to suppress evidence under the clearly erroneous standard. *United States v. Betancur*, 24 F.3d 73, 76 (10th Cir.1994). The evidence is considered in the light most favorable to the district court's ruling. *United States v. Soto*, 988 F.2d 1548, 1551 (10th Cir.1993). The ultimate determination of reasonableness and other conclusions of law are reviewed de novo. *Betancur*, 24 F.3d at 76; *Soto*, 988 F.2d at 1551.

### A. Search of Residence

Mr. Richardson first contends that the search warrant was invalid because Officer Cash and other Tulsa city police officers exceeded their jurisdiction by conducting the search outside Tulsa city limits. He relies on *State v. Stuart*, 855 P.2d 1070 (Okla.Crim. App.1993), which upheld the suppression of evidence where the "affidavit for the search

warrant was fatally defective because the evidence supporting it was obtained by officers outside their jurisdiction." *Id.* at 1074. The court held that the police officers in that case "should have notified ... any other law enforcement agency having jurisdiction outside the city limits, to conduct the controlled purchase of narcotics." *Id.* at 1073. *Cf. Ross v. Neff,* 905 F.2d 1349, 1353–54 (10th Cir.1990)(an arrest made outside of the arresting officer's jurisdiction violates the Fourth Amendment).

▉▉▉ In determining the reasonableness of a state search or seizure under the Fourth Amendment, we conduct an independent inquiry and apply federal law. *Elkins v. United States,* 364 U.S. 206, 223–24, 80 S.Ct. 1437, 1447–49, 4 L.Ed.2d 1669 (1960). We are not prohibited from considering state law, *see United States v. Ibarra,* 955 F.2d 1405, 1408 (10th Cir.1992)(considering Wyoming law in Fourth Amendment context), although such consideration may not enlarge nor diminish federal law, *Elkins,* 364 U.S. at 224, 80 S.Ct. at 1447–49. "A violation of state law may or may not form the basis for suppression on Fourth Amendment grounds." *United States v. Price,* 75 F.3d 1440, 1443–44 (10th Cir.1996); *see also Ibarra,* 955 F.2d at 1408–11.

Here, in contrast to *Stuart,* Agent Pickering of the OBN participated with the Tulsa police in the entire investigation from the first controlled purchase until she served Mr. Richardson with the search warrant. Because Tulsa city police officers acted in concert with the OBN, the investigation [1] and search of Mr. Richardson's residence were not beyond their authority. *See Price,* 75 F.3d at 1442–44 (holding evidence admissible where county undersheriff acted outside of jurisdiction but was accompanied by agents with state-wide jurisdiction); *United States v. Occhipinti,* 998 F.2d 791, 798–99 (10th Cir.1993) (same). Accordingly, the warrant

issued to search Mr. Richardson's residence was not invalid.

### B. *Overbreadth of Search Warrant*

▉▉▉ Mr. Richardson asserts the search warrant was overbroad because the "lengthy list of specific things" to be seized allowed agents conducting the search to rummage through all of his papers and effects without any real limitations. "The [F]ourth [A]mendment requires that warrants 'particularly describ[e] the place to be searched, and the persons or things to be seized.'" *United States v. Harris,* 903 F.2d 770, 774 (10th Cir.1990)(quoting U.S. Const. amend. IV). "[T]he problem is not that of intrusion *per se,* but of a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971). The particularity requirement is intended to ensure "that those searches deemed necessary should be as limited as possible." *Id.* Broad and generic terms of description may be valid when the terms are "'as specific as the circumstances and nature of the activity under investigation permit.'" *United States v. Leary,* 846 F.2d 592, 600 (10th Cir.1988) (quoting *United States v. Santarelli,* 778 F.2d 609, 614 (11th Cir.1985)).

In the instant case, the search warrant indicated that Mr. Richardson unlawfully possessed cocaine, that cocaine was easily destroyed, and that Mr. Richardson engaged in the sale of cocaine. The illegal activity described in the warrant "makes it difficult to list with any greater particularity the books and records desired to be seized which evidences such activity." *Harris,* 903 F.2d at 775. The particularity requirement does not prohibit all intrusions. It prohibits only those intrusions which are not as limited as possible. We hold the warrant was valid because it described the items to be seized as specifically as possible under the circumstances.

---

1. We reject Mr. Richardson's assertion that the investigation violated the Fourth Amendment because Officer Cash and Mr. Gilmartin possessed a controlled substance in violation of state and federal drug laws when conducting the controlled purchases. "'The purpose of controlled drug purchases ... is to identify and prosecute drug dealers, not to resell or consume the drugs. Such undercover operations therefore do not contain the criminal intent, or *mens rea,* necessary to convert the action into a crime.'" *United States v. Vargas,* 925 F.2d 1260, 1263 (10th Cir.1991)(quoting *United States v. French,* 900 F.2d 1300, 1302 (8th Cir.1990)).

### C. Probable Cause for Search Warrant

 Mr. Richardson also contends the affidavit in support of the warrant failed to establish probable cause because neither the informant nor his source connecting Mr. Richardson to the crime were known to be credible and reliable, and there was no evidence that contraband was located in Mr. Richardson's home. "An affidavit in support of a search warrant must provide a substantial basis for determining the existence of probable cause; that there is a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Reyes*, 798 F.2d 380, 382 (10th Cir.1986)(citing *Massachusetts v. Upton*, 466 U.S. 727, 732–33, 104 S.Ct. 2085, 2087–88, 80 L.Ed.2d 721 (1984)). "The mere fact an affidavit does not contain personal knowledge of illegal activity at the residence is not fatal to the determination of probable cause." *United States v. Parrish*, 925 F.2d 1293, 1296 (10th Cir.1991). A magistrate's determination of probable cause rests upon a practical, commonsense analysis of the totality of the circumstances. *Upton*, 466 U.S. at 732, 104 S.Ct. at 2087–88. We do not review a magistrate's determination of probable cause de novo; we decide "whether the evidence viewed as a whole provided a 'substantial basis' for the Magistrate's finding.'" *Id.* at 732–33, 104 S.Ct. at 2088. Moreover, we give great deference to a magistrate's determination of probable cause. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); *United States v. Bishop*, 890 F.2d 212, 214 (10th Cir.1989), *cert. denied*, 493 U.S. 1092, 110 S.Ct. 1164, 107 L.Ed.2d 1067 (1990).

 In *Gates*, the Supreme Court rejected the formal requirement that affidavits provide facts establishing the veracity or specific reliability of an informant in favor of a totality-of-the-circumstances test. *Upton*, 466 U.S. at 732, 104 S.Ct. at 2087–88. Under the latter test, "there is no need for a declaration of the reliability of an informant when the informant's information is corroborated by other information." *United States v. Sturmoski*, 971 F.2d 452, 457 (10th Cir.1992). *See also United States v. Brown*, 984 F.2d 1074, 1076–77 (10th Cir.)(affiant-officer observed residence and corroborated seemingly innocent activity), *cert. denied*, ─── U.S. ───, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993); *United States v. Hager*, 969 F.2d 883, 887 (10th Cir.)(details provided by informant corroborated by law enforcement authorities), *cert. denied*, 506 U.S. 964, 113 S.Ct. 437, 121 L.Ed.2d 357 (1992).

In the instant case, Officer Cash's affidavit described the following events. An informant told Officer Cash that he could arrange a large cocaine transaction involving Mr. Richardson and Mr. Stone. After Officer Cash verified the alleged participants' identities, a meeting was arranged. Officer Cash observed the informant enter Mr. Stone's vehicle to make a cocaine purchase. The informant returned from Mr. Stone's vehicle and informed Officer Cash that he had given Mr. Stone cash and that Mr. Stone was going to Mr. Richardson's residence to acquire the cocaine. Other officers observed Mr. Stone enter the driveway of Mr. Richardson's residence, exit his vehicle, disappear from sight for twenty minutes, return to his vehicle and depart. Officer Cash then observed Mr. Stone's return from Mr. Richardson's residence. The informant again entered Mr. Stone's vehicle and returned with cocaine. The affidavit also recited the informant's numerous prior cocaine transactions with Mr. Richardson and Mr. Stone. The affidavit demonstrated that the informant's tip was corroborated by a controlled narcotics purchase and the observation of Mr. Richardson's residence. We are persuaded the evidence contained in the affidavit provided the magistrate with a sufficient basis for concluding there was probable cause for issuing the warrant and for believing evidence of a crime would be found in Mr. Richardson's home.

### III

 Mr. Richardson asserts the evidence was insufficient to support his conspiracy and firearm convictions. When we consider a challenge to the sufficiency of the evidence, we review the entire record in the light most favorable to the government. *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir.), *cert. denied*, 498 U.S. 874, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990). Our task

**1546**

is to determine whether the evidence is such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.*

### A. *Conspiracy*

 The government charged a conspiracy between Mr. Richardson and Mr. Stone to traffic in narcotics from October 10 to October 29, 1993. Mr. Richardson argues the government proved only a buyer-seller relationship between him and Mr. Stone. "[W]e are mindful that the conspiracy doctrine is inherently subject to abuse and that the government frequently uses conspiracy to cast a wide net that captures many players." *United States v. Evans,* 970 F.2d 663, 668 (10th Cir.1992), *cert. denied,* 507 U.S. 922, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993). "In order to sustain a conviction for conspiracy, the government must show that there was an agreement to violate the law, that the defendant knew the essential objectives of the conspiracy, that the defendant knowingly and voluntarily took part in the conspiracy, and that the coconspirators were interdependent." *Id.* at 668. The government must show that the defendant had at least a "general awareness of both the scope and the objective" of the conspiracy. *Id.* at 670. *See also United States v. Anderson,* 981 F.2d 1560, 1563 (10th Cir.1992). The government must also show that the defendant had " 'a meeting of the minds in the common design, purpose, or objects of the conspiracy' " with other conspirators. *Id.* (quoting *United States v. Jones,* 808 F.2d 754, 755 (10th Cir. 1987)). "It is not enough … for the government to show only … a buyer-seller relationship between the defendant and a member of the conspiracy." *Evans,* 970 F.2d at 669. However, " '[t]he nature of the offense of conspiracy with its attendant aspects of secrecy, often requires that elements of the crime be established by circumstantial evidence.' " *United States v. Savaiano,* 843 F.2d 1280, 1293 (10th Cir.) (quoting *United States v. Andrews,* 585 F.2d 961, 964 (10th Cir.1978)), *cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 74 (1988).

Mr. Stone testified that he and Mr. Richardson had an arrangement whereby he would notify Mr. Richardson when he needed methamphetamine or cocaine, and that he had sold narcotics while working for Mr. Richardson on hundreds of occasions. Significantly, on the day Mr. Richardson was arrested, Mr. Stone had informed Mr. Richardson that he knew an individual who wanted to purchase a pound of cocaine, and Mr. Richardson had agreed to make the sale. Mr. Stone further testified that Mr. Richardson had told him not to resell his drugs at Mr. Richardson's residence, and that Mr. Richardson kept track of the drug deals in a notebook. Mr. Stone testified Mr. Richardson had told him that his source, Mr. Castillo, was in California and that Mr. Richardson was indebted to Mr. Castillo for approximately $100,000. Mr. Stone accompanied Mr. Richardson to an airport to acquire drugs from Mr. Castillo.

Pursuant to the search warrant, the government seized from Mr. Richardson's residence approximately 8,000 dosage units of methamphetamine, approximately 5,000 dosage units of cocaine, a large set of digital electronic scales, and large ziplock bags with narcotics residue. The government seized from Mr. Richardson's truck a list of ingredients for making methamphetamine, two notebooks detailing drug transactions, and a cellular phone. A narcotics officer testified that the evidence recovered from Mr. Richardson's residence and truck indicated a large narcotics distribution effort.

Viewing the evidence in the light most favorable to the government, we hold the evidence was clearly sufficient to establish Mr. Richardson's participation in a conspiracy with Mr. Stone to distribute narcotics.

### B. *Using or Carrying a Firearm in Connection with a Drug Trafficking Offense*

 A conviction under 18 U.S.C. § 924(c)(1) requires the government to prove three elements: (1) the defendant committed the underlying crime; (2) the defendant "used" or "carried" a weapon; and (3) the use or carriage of the weapon was "during and in relation to" the drug trafficking crime. *United States v. Nicholson,* 983 F.2d 983, 990 (10th Cir.1993). Because Mr. Richardson was charged under both the "use" and "carry" prongs of section 924(c)(1), we must de-

termine whether either prong may serve as a basis for upholding his conviction.[2] *See Bailey v. United States,* — U.S. —, —, 116 S.Ct. 501, 509, 133 L.Ed.2d 472 (1995); *Parrish,* 925 F.2d at 1297.

### 1. The "Use" Prong

At the time of trial, a conviction under the "use" prong of section 924(c)(1) required that Mr. Richardson have "ready access" to a firearm that was an "integral part" of the drug trafficking offense and increased the likelihood that the offense would succeed. *United States v. McKinnell,* 888 F.2d 669, 675 (10th Cir.1989). To show that a firearm was readily accessible, the government was required to show only that "the firearm was available to the defendant in the vicinity where the drug trafficking offense took place." *Parrish,* 925 F.2d at 1297.

While this appeal was pending, the Supreme Court held that "[t]o sustain a conviction under the 'use' prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." *Bailey,* — U.S. at —, 116 S.Ct. at 509. The Court reasoned that " 'use' must connote more than mere possession of a firearm by a person who commits a drug offense." *Id.* at —, 116 S.Ct. at 506. The Court then described activities that fall within active employment of a firearm, and those that do not.[3] *Id.* at —, 116 S.Ct. at 508. The Court concluded that "[a] defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. . . . If the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not 'used.' " *Id.* Applying the "active employment" rule, the Court found no evidence of use of a

firearm where the firearm was found in a bag locked in the trunk of the car defendant was driving when he was arrested. *Id.* at —, 116 S.Ct. at 509. Similarly, the Court found no evidence of active employment where the firearm was found locked in a footlocker in a bedroom closet of the defendant's apartment. *Id.* Consequently, the *Bailey* Court reversed both section 924(c)(1) convictions.

In *United States v. Wacker,* 72 F.3d 1453 (10th Cir.1995), we applied the "active employment" rule of *Bailey,* reversed two "use" convictions under section 924(c)(1), and remanded a third section 924(c)(1) "use" conviction for a new trial with proper jury instructions.[4] In the first conviction, the firearm was found in a bag in the rear camper shell of the truck the defendant was driving. *Id.* at 1460–61. In the second conviction, the firearm was found in a file cabinet at defendant's home. *Id.* at 1462. The third firearm conviction was supported by *specific* testimony that the defendant carried a gun on her person while picking marijuana and that the gun could be seen. *Id.* at 1462, 1464. Because " 'a firearm can be used . . . when an offender has a gun on display during a transaction,' " *id.* at 1464 (quoting *Bailey,* — U.S. at —, 116 S.Ct. at 507), we could not say how a properly instructed jury might decide the issue, *id.* at 1465.

■ There is no evidence that Mr. Richardson actively employed a firearm at all. One witness testified Mr. Richardson "carried" guns, but there is no evidence that he brandished, bartered, fired or attempted to fire a firearm with respect to any drug trafficking offense. There was testimony that Mr. Richardson reached down after he

---

**2.** Under 18 U.S.C. § 924(c)(1) "[w]hoever, during and in relation to any . . . drug trafficking crime . . . uses *or* carries a firearm . . . shall . . . be sentenced to imprisonment for five years." Count Six charged that Mr. Richardson "knowingly used *and* carried" a firearm. The jury instructions defining Count Six state "it shall be unlawful *to use* a firearm." The jury instructions defining the essential elements of Count Six state the government must prove "the defendant uses *or* carries a firearm." The jury instructions defining use of a firearm include "uses *or* carries." We therefore examine both prongs of § 924(c)(1). *See Parrish,* 925 F.2d at 1297 ("'[A]

crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive." (citation omitted)).

**3.** The Court noted that "use" includes "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." *Bailey,* — U.S. at —, 116 S.Ct. at 508. The Court further noted that "use" does not include "the inert presence of a firearm." *Id.*

**4.** *Wacker* did not involve the § 924(c)(1) "carry" prong.

stopped his truck, but there was no testimony that he was reaching for a firearm. The firearms were not disclosed nor mentioned prior to Mr. Richardson's arrest. That Mr. Richardson generally carried guns does not satisfy the active employment requirement of *Bailey*. Accordingly, we hold that Mr. Richardson may not be convicted under the "use" prong of section 924(c)(1).

### 2. The "Carry" Prong

■■■ A conviction under the "carry" prong of section 924(c)(1) requires possession of the firearm through dominion and control, and transportation or movement of the weapon. *United States v. Martinez*, 912 F.2d 419, 420 (10th Cir.1990)(citing *United States v. Cardenas*, 864 F.2d 1528, 1535–36 (10th Cir.), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989)). In this case, it is clear that Mr. Richardson carried a firearm. One firearm was found on his person and another was found in the truck on the seat next to him.

■■■ Section 924(c)(1) also requires the government to prove Mr. Richardson carried a firearm "during and in relation to" a drug trafficking offense. "To prove this necessary relation, the Government's evidence must support a finding that the defendant *intended* the weapon to be available for use during the drug transaction." *Nicholson*, 983 F.2d at 990 (citing *United States v. Matthews*, 942 F.2d 779, 783 (10th Cir.1991))(emphasis in original). Specifically, the government must prove that the defendant availed himself of the weapon and that the weapon "played an integral role" in the drug offense. *Id.* As an appellate court reviewing for sufficiency of the evidence, we "presume a nexus between a firearm and a drug trafficking offense when an individual with ready access

to a firearm is involved in such an offense." *United States v. Baker*, 30 F.3d 1278, 1280 (10th Cir.)(quoting *United States v. Coslet*, 987 F.2d 1493, 1495 (10th Cir.1993)), *cert. denied*, —— U.S. ——, 115 S.Ct. 273, 130 L.Ed.2d 190 (1994). However, "[a] defendant can overcome this presumption by presenting evidence that the weapon was present for a reason other than facilitating the drug transaction." *Id.*[5]

■■■ Mr. Richardson was charged with carrying a firearm during and in relation to the predicate crimes of possession of methamphetamine and conspiracy. There is no evidence that Mr. Richardson carried a firearm during and in relation to the possession of methamphetamine. The firearms were found on Mr. Richardson's person and in his truck. Mr. Richardson did not possess methamphetamine at that time. There is no evidence that a firearm was present or referenced during any of the methamphetamine transactions detailed at trial, nor were weapons found where these transactions took place. We hold, therefore, that Mr. Richardson did not carry a firearm during and in relation to his conviction for possession of methamphetamine.

■■■ We now turn to the question of whether Mr. Richardson carried a firearm during and in relation to a drug conspiracy.[6] We have reasoned that " 'the evident purpose of [section 924(c) ] was to impose more severe sanctions where firearms facilitated, or had the potential of facilitating, the commission of' " a drug transaction. *United States v. Sullivan*, 919 F.2d 1403, 1432 (10th Cir.1990)(quoting *United States v. Stewart*, 779 F.2d 538, 540 (9th Cir.1985)). In *Sullivan*, one defendant was convicted of a conspiracy in violation of section 846 and was

---

5. We have often treated the question of whether a weapon was used or carried "during and in relation to" a drug trafficking offense as if it were inextricably related to the issue of whether use of the firearm formed an integral part of the criminal undertaking, which was one aspect of the pre-*Bailey* interpretation of "use" under § 924(c)(1). *See e.g., Matthews*, 942 F.2d at 783–84. However, these two questions are distinct.

6. We have previously held that a 21 U.S.C. § 846 conspiracy may serve as the predicate crime for

a section 924(c)(1) conviction. *United States v. Abreu*, 962 F.2d 1425, 1431 (10th Cir.1992), *aff'd on remand*, 997 F.2d 825 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2748, 129 L.Ed.2d 866 (1994). Section 924(c)(1) does not restrict predicate crimes to substantive crimes, but instead "provides that the underlying offense need only be one for which the defendant *may* be prosecuted...." *United States v. Hill*, 971 F.2d 1461, 1464 (10th Cir.1992).

charged with carrying a firearm during and in relation to the conspiracy charge. *Id.* at 1408. There was sufficient evidence to support the finding that the defendant possessed a firearm located in her bedroom. *Id.* at 1430–31. We noted, however, that "[t]he government does not cite any specific evidence to indicate that she carried or used a firearm" during and in relation to the drug conspiracy, *id.* at 1432, and held the evidence insufficient to support the section 924(c)(1) conviction. In our other cases in which the predicate crime for a conviction under section 924(c)(1) was a drug conspiracy, the defendant had used or carried the gun while engaged in overt acts in furtherance of the conspiracy. *See Wacker,* 72 F.3d at 1464 (Evidence that defendant "carried the gun on her person while picking marijuana" was "sufficient to demonstrate that the pistol was carried in furtherance of the conspiracy."); *Matthews,* 942 F.2d at 782 ("Members of the conspiracy routinely took the weapons with them on drug-selling excursions in order to protect the drugs and cash they carried."); *Sullivan,* 919 F.2d at 1431–32 ("Three of the defendants possessed weapons at the laboratory site, and ... two defendants took weapons to investigate possible trouble with the 'feds.' ").[7]

The Second Circuit addressed a conviction under the section 924(c)(1) carry prong in *United States v. Lasanta,* 978 F.2d 1300 (2d Cir.1992), where the predicate crimes were section 846 conspiracies. "The jury found that [one defendant] possessed a loaded revolver ... immediately after a narcotics-related meeting ... during the course of" the charged conspiracies. *Id.* at 1308. The gun was found in the driver's side door of the defendant's car. *Id.* However, "the agents found no drugs despite their thorough search of the inside of the car, trunk, and [the defendant's] person." *Id.* at 1309. There was no evidence that the gun found in the car was carried during the meeting. The court concluded that "[t]he only thing we know is

his involvement in heroin and cocaine conspiracies.... In order to sustain this conviction ... we would have to conclude that any time a conspirator carried a gun during the course of a conspiracy, he or she violated this provision. We are not prepared to do so." *Id.*

In the present case, the record reflects more of a nexus between the drug conspiracy and the gun Mr. Richardson carried than was present in *Lasanta.* Mr. Stone testified that on the morning of October 29, he went to Mr. Richardson's ranch and told him he knew someone who wanted to purchase a pound of cocaine. Mr. Richardson asked a couple of questions and then agreed to the transaction. Mr. Stone testified that Mr. Richardson was to meet him at a bait shop where the transaction was to take place. As Mr. Stone and Mr. Richardson were traveling in separate cars back to Mr. Richardson's house, Mr. Richardson noticed they were being followed. He signaled to Mr. Stone, told him they were being followed by the police, and stated that the deal was off. Mr. Richardson's discussions with Mr. Stone and his subsequent travel to his home constituted acts in furtherance of the drug conspiracy. Mr. Richardson was arrested on his way home with a firearm in his pocket and a rifle on the seat next to him. Unlike the defendant in *Lasanta,* there is specific evidence Mr. Richardson carried a firearm when he engaged in acts in furtherance of the conspiracy while in his truck. Accordingly, we hold the evidence was sufficient for the jury to conclude that Mr. Richardson carried a firearm during and in relation to the drug conspiracy notwithstanding his proffered explanation for the presence of the firearm.

## IV

■ Mr. Richardson contends extrinsic evidence was erroneously admitted on rebuttal because it was outside the bounds of the charges alleged and was used to bolster the prosecution's case-in-chief. On cross exami-

---

7. Similarly, when other circuits have upheld § 924(c)(1) convictions based on the predicate crime of conspiracy, the defendant was engaged in overt acts in furtherance of the conspiracy. *See United States v. Bennett,* 75 F.3d 40, 45 (1st Cir.1996) (gun used in conspiracy to steal marijuana); *United States v. Jackson,* 65 F.3d 631, 634 (7th Cir.1995) (gun kept near drug stash and used when defendant heard intruders); *United States v. Granados,* 962 F.2d 767, 772 (8th Cir.1992)(weapons on display at drug-trafficking scene).

nation, Mr. Richardson testified that Mr. Stone's testimony regarding Mr. Castillo was untrue. Mr. Richardson further testified that he was unaware Mr. Castillo had a felony conviction. In response, the government called Officer Hondros who testified that Mr. Castillo had a felony conviction for the transportation for sale of a controlled substance. This is the evidence Mr. Richardson objects to.

■■■ We need not determine whether the admission of the testimony was error because if it was it was harmless. We review the record de novo to determine whether an error is harmless. *United States v. Flanagan,* 34 F.3d 949, 955 (10th Cir.1994). Because the alleged error was not a constitutional error, it "is deemed harmless 'unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such an effect.'" *Id.* (quoting *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir.1990)). "[T]he government has the burden of proving that the non-constitutional error was harmless." *Id.*

Mr. Castillo's involvement in trafficking narcotics had been previously disclosed during the trial. On direct examination, Mr. Stone testified that he and Mr. Richardson traveled to an airport to acquire narcotics from Mr. Castillo. Mr. Stone further testified that Mr. Richardson told him he owed Mr. Castillo approximately $100,000. Mr. Richardson's only objection during the relevant portion of Mr. Stone's testimony concerned leading and suggestive questions.

Because Mr. Castillo's involvement in drug trafficking was previously admitted as a result of Mr. Stone's testimony, we cannot say that any error in admitting similar evidence on rebuttal had a "substantial influence" on the outcome, nor that we have "grave doubt" as to whether it had such an effect. Upon Mr. Richardson's objection to Officer Hondros' testimony, moreover, the district court offered to give a limiting instruction which Mr. Richardson's counsel declined. We hold that any error in admitting Mr. Castillo's felony conviction was harmless.

## V

■■■ We next address Mr. Richardson's contention that evidence concerning drug transactions between Mr. Stone and Mr. Gilmartin was erroneously admitted into evidence. "We review evidentiary rulings for abuse of discretion." *United States v. Kimball,* 73 F.3d 269, 271 (10th Cir.1995).

Before trial, the government signalled its intention to offer testimony by Mr. Gilmartin in which he would relate his participation in drug transactions with Mr. Stone at Mr. Richardson's toolshed before the onset of the alleged conspiracy. Upon Mr. Richardson's objection, the court limited the scope of the testimony to unlawful or bad acts in which Mr. Richardson actively participated. The government indicated that Mr. Gilmartin's testimony would show such active participation.[8]

Mr. Gilmartin's testimony did not live up to its advance billing. On the stand, he testified about three occasions on which he purchased cocaine at the shed, but when asked from whom he had bought the drugs he named only Mr. Stone. At that point, the government sought direction from the court about how to proceed without running afoul of the court's prior order. Without objection, the court advised the government to ask Mr. Gilmartin whether he had personally purchased cocaine from Mr. Richardson. Mr. Gilmartin answered that he had not. On cross-examination, Mr. Gilmartin again testified that he had not seen Mr. Richardson give cocaine to Mr. Stone or to him. The defense then moved for a mistrial based on the admission of Mr. Stone's purchases of cocaine in Mr. Richardson's shed. The district court refused to grant a mistrial. On appeal, Mr. Richardson contends the admission of Mr. Gilmartin's testimony about Mr. Stone requires a new trial.

---

**8.** "Specifically, Your Honor, there are instances where Mr. Stone and Mr. Gilmartin went to Mr. Richardson's tool shed and Mr. Richardson handed narcotics, cocaine and methamphet-amine to Mr. Stone and Mr. Gilmartin and they left the shed. That's the type of testimony that we'll be having." Rec., vol. I, pt. C at 569.

■ It appears that in the pretrial proceedings concerning the admission of Mr. Gilmartin's testimony, the parties and the court agreed that evidence about Mr. Stone prior to the beginning of the charged conspiracy with Mr. Richardson would not be admissible unless it demonstrated Mr. Richardson's direct participation in criminal activity.[9] When Mr. Gilmartin's testimony diverged from the parties' expectations, the government sought instruction from the court. When Mr. Gilmartin said he had not purchased cocaine from Mr. Richardson, the government abandoned the line of questioning. Mr. Richardson never objected to the questioning. Indeed, he declined the court's offer to strike offending testimony from the record. By failing to object, the defense waived the argument that the evidence was inadmissible. *Jetcraft Corp. v. Flight Safety Int'l,* 16 F.3d 362, 366 (10th Cir.1993).

■ Once Mr. Gilmartin's evidence was a part of the record, Mr. Richardson could have sought to remedy its effects on the jury by requesting a limiting instruction. Instead, he moved for a mistrial, which the court denied. "[T]he trial court ordinarily is in the best position to determine whether the incident of impropriety merited a mistrial," *United States v. Liefer,* 778 F.2d 1236, 1246 (7th Cir.1985), and we review its denial for an abuse of discretion, *United States v. Martinez,* 979 F.2d 1424, 1431 (10th Cir.1992), *cert. denied,* 507 U.S. 1022, 113 S.Ct. 1824, 123 L.Ed.2d 454 (1993).

The evidence of Mr. Stone's bad acts did not concern Mr. Richardson himself, and therefore was not relevant. *See Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988). Moreover, Mr. Gilmartin's testimony could well be taken to *support* Mr. Richardson's contention that Mr. Stone sold drugs from the shed without his knowledge.· "There is no evidence that the Government's actions were

more than an oversight and [Richardson] does not allege that the Government acted in bad faith."[10] *Kendall,* 766 F.2d at 1437. Accordingly, we hold that the court did not abuse its discretion in declining to grant the motion for a mistrial.

### VI

Mr. Richardson argues that his conviction violated the Double Jeopardy Clause of the Fifth Amendment in two instances. He asserts first that Counts One, Four and Five, when taken together, are multiplicious of Count Eleven, and second that Count Four is multiplicious of Count Five. Mr. Richardson raises his multiplicity challenge for the first time on appeal. We thus review for plain error. *United States v. Olano,* 507 U.S. 725, 730–32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993). Our first inquiry under the plain error analysis is to determine whether there has been an error. *Id.* at 1777, 113 S.Ct. at 732–34.

■ The Double Jeopardy Clause has two components: the prosecution component, which "protects against a subsequent prosecution for the same offense after either an acquittal or a conviction;" and the punishment component, which "protects against multiple punishments for the same offense." *United States v. Koonce,* 945 F.2d 1145, 1148 (10th Cir.1991)(citing *Grady v. Corbin,* 495 U.S. 508, 516, 110 S.Ct. 2084, 2090–91, 109 L.Ed.2d 548 (1990)), *cert. denied,* 503 U.S. 994, 503 U.S. 998, 112 S.Ct. 1695, 112 S.Ct. 1705, 118 L.Ed.2d 406, 118 L.Ed.2d 413 (1992). With respect to the punishment component, "[m]ultiplicity occurs when more than one count of an indictment cover the same criminal behavior." *United States v. Wood,* 57 F.3d 913, 919 (10th Cir.1995). " 'To support a claim for double jeopardy, a defendant must show that the two offenses charged are in law and in fact the same

---

**9.** *See* Fed.R.Evid. 404(b). "Rule 404(b) provides that '[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.' Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *United States v. Kendall,* 766 F.2d

1426, 1436 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986).

**10.** The record does not resolve whether Mr. Gilmartin changed his story or the government failed to adequately question its witnesses before trial.

offense.'" *United States v. Johnson*, 977 F.2d 1360, 1373 (10th Cir.1992)(quoting *United States v. Marable*, 578 F.2d 151, 153 (5th Cir.1978)), *cert. denied*, 506 U.S. 1070, 113 S.Ct. 1024, 122 L.Ed.2d 170 (1993). Moreover, we must consider whether Congress intended that a defendant be subject to multiple convictions and sentences for the underlying offenses. *United States v. Sturmoski*, 971 F.2d 452, 461 (10th Cir.1992); *see Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977)("Where consecutive sentences are imposed at a single trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense."). We discern the intent of Congress by looking first "to the language of the statutes and then to legislative history." *United States v. Morehead*, 959 F.2d 1489, 1506 (10th Cir.1992), *aff'd on rehearing sub. nom. United States v. Hill*, 971 F.2d 1461 (10th Cir.1992)(en banc).

### A. Counts One, Four, Five and Eleven

■ Mr. Richardson contends the counts for possession of cocaine and methamphetamine, and the count for conspiracy are multiplicious of the count for use of property for narcotics-related purposes under section 856 because all are based on possession of the same drugs. We rejected this argument in *Sturmoski:*

> The statutory language and legislative history of 21 U.S.C. 856(a) demonstrate that Congress intended to create a new felony that would punish a defendant's *use of property* for manufacturing activities related to narcotics. The plain language of the statute evidences a clear congressional intent to punish a defendant who maintains property for the purpose of manufacturing controlled substance. This section goes beyond the proscriptions found in other statutes relating to possession and manufacture of controlled substances and actually criminalizes a particular defendant's use of property.

*Sturmoski*, 971 F.2d at 461–62 (emphasis in original). Mr. Richardson's convictions for possession, conspiracy, and use of property

for narcotics-related purposes were not multiplicious.

### B. Counts Four and Five

■ Mr. Richardson also asserts the counts for possession of cocaine and for possession of methamphetamine are multiplicious because the two controlled substances were found together. One pound of cocaine and a half-pound of methamphetamine were found in Mr. Richardson's tool shed in the same bag.

We have held that simultaneous possession of different controlled substances may qualify as separate offenses under section 841(a) where they are found in the same vehicle. *United States v. Davis*, 55 F.3d 517, 521 (10th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 249, 133 L.Ed.2d 175 (1995). In *Davis*, powder cocaine was found in the wheel well of a vehicle and crack cocaine was found in a briefcase in the trunk. The defendant argued that he should not have been sentenced for two section 924(c)(1) firearm convictions because the two controlled substance counts constituted a single underlying offense. We held that "possession with intent to distribute crack and possession with intent to distribute powder cocaine are separate offenses for double jeopardy purposes." *Id.* The facts here, where different controlled substances were found in the same bag, do not warrant a different conclusion.

Five other circuits have similarly concluded that the simultaneous possession of different controlled substances constitute separate offenses under section 841(a). *See United States v. Bonilla Romero*, 836 F.2d 39, 46–47 (1st Cir.1987)(consecutive sentences under § 841(a)(1) for possession of heroin and cocaine with intent to distribute), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988); *United States v. DeJesus*, 806 F.2d 31, 35–37 (2d Cir.1986)(same), *cert. denied*, 479 U.S. 1090, 107 S.Ct. 1299, 94 L.Ed.2d 155 (1987); *United States v. Grandison*, 783 F.2d 1152, 1155–56 (4th Cir.)(same), *cert. denied*, 479 U.S. 845, 107 S.Ct. 160, 93 L.Ed.2d 99 (1986); *United States v. Davis*, 656 F.2d 153, 156–60 (5th Cir.1981)(consecutive sentences under § 841(a)(1) for possession of quaaludes and marijuana with intent to distribute), *cert.*

*denied,* 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982); *United States v. Pope,* 561 F.2d 663, 669 (6th Cir.1977)(reversing conviction on other grounds but concluding under § 841(a)(1) possession of heroin and methadone with intent to distribute are separate offenses). We have found no circuit interpreting section 841(a)(1) to hold otherwise.

The plain language of section 841 confirms that Congress intended to treat different controlled substances as separate offenses. Section 841(a)(1) prohibits "possession of 'a controlled substance,' not of 'a controlled substance or group of controlled substances.'" *Bonilla Romero,* 836 F.2d at 47. In addition, the penalty provisions for section 841(a) distinguish between controlled substances. *See DeJesus,* 806 F.2d at 36; *Grandison,* 783 F.2d at 1156. *But see Davis,* 656 F.2d at 158 (finding persuasive argument that "a controlled substance" creates single punishable offense for possession of several controlled substances). The legislative history of section 841(a)(1) does not reveal an intent different from the statute's plain meaning. *See Bonilla Romero,* 836 F.2d at 47.

Punishment for the simultaneous possession of different controlled substances under section 841(a)(1) does not violate the Double Jeopardy Clause. Mr. Richardson's separate convictions did not result in error, plain or otherwise.

### VII

Finally, Mr. Richardson argues the district court erred when it included ten pounds of methamphetamine allegedly acquired at an airport to determine his base offense level under the Sentencing Guidelines. We are not persuaded.

 We review the district court's factual determinations of quantities for application of the Sentencing Guidelines under the clearly erroneous standard. *United States v. Richards,* 27 F.3d 465, 468 (10th Cir.1994). The district court's legal conclusions with respect to the Sentencing Guidelines are subject to de novo review. *United States v. Roberts,* 14 F.3d 502, 523 (10th Cir.1993).

 The court must find the quantity of drugs for sentencing purposes by a preponderance of the evidence. *United States v. Cody,* 7 F.3d 1523, 1527 (10th Cir.1993). The Guidelines provide that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3 (Background). The defendant need not be convicted of, *see United States v. Boyd,* 901 F.2d 842, 844 (10th Cir.1990), nor charged in the indictment for, *see Harris,* 903 F.2d at 778, the underlying offenses pertaining to any additional quantities of drugs used for sentencing purposes. "A sentencing court may consider any reliable source of information that has some minimum indicia of reliability." *Cody,* 7 F.3d at 1527.

 In the instant case, Mr. Stone testified that he accompanied Mr. Richardson to an airport to obtain ten pounds of methamphetamine. Mr. Stone testified that Mr. Richardson told him the methamphetamine was from Mr. Castillo. He also testified that the methamphetamine was packaged in approximately two-and-a-half-pound vacuum-sealed bags and was transferred into bags recovered from Mr. Richardson's tool shed. This testimony clearly supplies sufficient evidence to support the drug quantity finding.

 Mr. Richardson further asserts the ten pounds of methamphetamine allegedly acquired at the airport were erroneously calculated as "D" methamphetamine rather than "L" methamphetamine because no one testified to the type of methamphetamine. "The government has the burden of proof and production during the sentencing hearing to establish the amounts and types of controlled substances related to the offense." *United States v. Deninno,* 29 F.3d 572, 580 (10th Cir.1994), *cert. denied,* ─── U.S. ───, 115 S.Ct. 1117, 130 L.Ed.2d 1081 (1995). The type of methamphetamine, however, "need only be proved by a preponderance of the evidence at sentencing." *Id.*

"Although the burden of proof is on the government" to prove the type of methamphetamine, "the burden of alleging factual inaccuracies of the presentence report is on the defendant." *Id.* "Failure to object to a fact in a presentence report, or failure to object at the hearing, acts as an admission of fact." *Id.* Because Mr. Richardson failed to object to the type of methamphetamine prior to appeal, we review for plain error. "However, factual disputes do not rise to the level of plain error." *Id.* (citing *United States v. Saucedo,* 950 F.2d 1508, 1518 (10th Cir.1991), *cert. denied,* 507 U.S. 942, 113 S.Ct. 1343, 122 L.Ed.2d 725 (1993)). Mr. Richardson's argument based on the type of methamphetamine used for sentencing must fail.[11]

The judgment of the district court is AFFIRMED.

---

11. We note that the government introduced evidence at the sentencing hearing that the meth-

amphetamine found at Mr. Richardson's apartment was "D" methamphetamine.