**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 4 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JASON HALEY,

    Defendant-Appellant.

No. 96-1109
No. 96-1111
(D.C. No. 95-CR-34-S)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL**, and **KELLY**, Circuit Judges.

Defendant-Appellant Jason Haley ("Haley") was convicted in federal

district court of aiding and abetting the distribution of methamphetamine, in

violation of 18 U.S.C. § 841(a)(1), (b)(1)(C), and 18 U.S.C. § 2; using and

carrying a firearm in relation to a drug trafficking offense, in violation of 18

U.S.C. § 924(c); and possession of a firearm by a convicted felon, in violation of

18 U.S.C. § 922(g)(1).  Haley's base offense level for the aiding and abetting

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

conviction was calculated at 18. Based on this offense level and his criminal history category the district court sentenced Haley to 71 months imprisonment.[1] In addition, for his § 924(c) conviction Haley received an additional consecutive 60-month sentence.

In this appeal Haley challenges the sufficiency of the evidence before the jury that he used and carried a firearm during and in relation to the drug trafficking offense for which he was convicted. Haley also challenges the district court's calculation of the quantity of drugs involved in its sentencing determination. We affirm both Haley's conviction and sentence.

Background

Haley's arrest, indictment and conviction stem from a single encounter involving Haley, cooperating co-defendant Russell Coleman ("Coleman"), with whom Haley lived at the times in question, and undercover ATF agent Scot Thomasson ("Thomasson"). On November 30, 1994, as part of his ongoing investigation of a suspected methamphetamine / illegal weapons ring operating out of Colorado Springs, Colorado, Thomasson visited Coleman's apartment to purchase some methamphetamine. Thomasson purchased methamphetamine from

_____

[1] Haley received a concurrent sentence for possession of a firearm by a convicted felon.

Coleman but was told by Coleman that he would have to come back if he wanted to buy more, as Coleman was expecting to receive additional supplies later that day.

Thomasson returned to Coleman's apartment later that evening. This time, because Coleman's room was being used by co-defendant James Maass to sell methamphetamine, Coleman directed Thomasson into Haley's room. Upon entering Haley's room, Thomasson noticed two handguns sitting on a coffee table, along with a small scale and some plastic bags. Coleman told Thomasson that the weapons belonged to Haley, and Coleman introduced Haley to Thomasson as Coleman's "partner." Haley volunteered to assist the transaction by measuring out the drugs on a scale, and Coleman accepted his assistance. Thomasson, concerned for his safety, picked up both guns and unloaded them, placing the ammunition well away from the guns on a separate table. Haley then retrieved the guns. He reloaded one of the guns and placed it on a shelf in his closet. Haley loaded and "racked" the other gun, a semi-automatic firearm, put it on his person, and kept it there throughout the remainder of the transaction.

When law enforcement officials began arresting ring members early in 1995, Haley was arrested and indicted with conspiracy to distribute and possession with intent to distribute 100 grams or more of methamphetamine; aiding and abetting the distribution of methamphetamine; using and carrying a

firearm in relation to a drug trafficking offense; and possession of a firearm by a felon.  A jury trial was held.  Coleman and one other co-defendant pled guilty and testified against the remaining co-defendants at trial.  Haley was found innocent of the conspiracy charge but guilty of all remaining charges.

Discussion

    1. Sufficiency of "used and carried" evidence

Haley claims that there was insufficient evidence to support his conviction under 18 U.S.C. § 924(c) of using or carrying a firearm during and in relation to a drug trafficking crime.   A claim of insufficiency of the evidence presents a "high hurdle" to the criminal defendant; "in reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether, taking the evidence -- both direct and circumstantial -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."  United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996).

Under 18 U.S.C. § 924(c) it is a crime for any person to use or carry a firearm "during and in relation to" any drug trafficking crime.  This court has held that when reviewing § 924(c) convictions for the use or carrying of a firearm, we may affirm if the evidence is sufficient to support conviction under

either the "use" or the "carry" prongs of the statute. See United States v. Richardson, 86 F.3d 1537, 1546-47 (10th Cir. 1996). A firearm is "used" in a drug transaction if the defendant "actively employed" it, for example by "brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire, a firearm." Bailey v. United States, 116 S. Ct. 501, 508 (1995); see also Richardson, 86 F.3d at 1547. A firearm is "carried" by a defendant during a drug transaction if the defendant exercises "dominion and control" over the weapon and transports or moves it. See Richardson, 86 F.3d at 1548. Finally, in order to use or carry a firearm "during and in relation to" a drug trafficking offense, the defendant must have intended that the firearm be available for use during the transaction, and it must be shown that the weapon played an "integral role in the drug offense." Id.; see also United States v. Lampley, _F.3d_, 1997 WL 644459, *7 (10th Cir. Oct. 20, 1997) (noting that the government must establish a "nexus" between the weapon and the underlying offense).

The evidence that Haley both used and carried the weapon during and in relation to the transaction for which he was convicted is overwhelming. According to the record, not only did Haley pick up a semi-automatic weapon, reload it, and carry it on his person, he also "racked" the semi-automatic weapon, that is, drew back the spring-loading mechanism on top of the barrel, which had the effect of chambering a bullet. Taking the evidence in the light most favorable

to the government, Haley's actions easily qualify as "brandishing" or "displaying" the weapon. Furthermore, Haley did not shelve the semi-automatic or otherwise put it away, but rather he placed it on his person and kept it there for the duration of the deal. This action clearly fits the legal definition of "carrying" a firearm.

As for the "during and in relation to" prong of § 924(c), this court has held that "'the evident purpose of section 924(c) was to impose more severe sanctions where firearms facilitated, or had the potential of facilitating, the commission of' a drug transaction." Richardson, 86 F.3d at 1548 (quoting United States v. Sullivan, 919 F.2d 1403, 1432 (10th Cir. 1990) (further citation omitted). On appellate review, we may "presume a nexus between a firearm and a drug trafficking offense when an individual with ready access to a firearm is involved in such offense . . . . However, a defendant can overcome this presumption by presenting evidence that the weapon was present for reasons other than facilitating the drug transaction." Id. (citations and internal quotations omitted).

Haley argues that he did not use a firearm during and in relation to the transaction between Coleman and Thomasson, because that transaction just happened to occur in his room, due to the temporary unavailability of Coleman's room. Haley contends that he did not place the guns in the room in anticipation of the deal, and indeed had no knowledge that a deal was to occur in his room

until Coleman called him in. He had no stake in the outcome of the deal, and merely made himself part of the transaction by volunteering to help weigh the drugs. Because he had no intent to use the weapons and because of his peripheral involvement in the deal, Haley claims that the evidence shows that the weapons were present "for a reason other than facilitating a drug transaction."

Here, Haley took one of the guns that Thomasson had unloaded, reloaded it, racked it, placed it on his person, and stayed in the room for the remainder of the transaction. Haley offers no evidence that there was any reason for him to reload, rack and carry the semi-automatic for any purpose other than to facilitate the transaction between Coleman and Thomasson. Thus, Haley fails to overcome the presumed nexus between the firearm and the crime.

2. Calculation of the quantity of methamphetamine

In applying the Sentencing Guidelines, the district court's factual determinations of drug quantities are reviewed under the clearly erroneous standard. See United States v. Richards, 27 F.3d 465, 468 (10th Cir.1994). "In determining the quantity of drugs involved, the government is not limited to the amount ... for which a defendant was convicted, and a defendant is responsible for 'all quantities ... with which he was directly involved.'" United States v. Sloan, 65 F.3d 861, 865 (10th Cir.1995) (quoting U.S.S.G. § 1B1.3, cmt., note 2)) The Government has the burden of proving the quantity by a preponderance of the

evidence. See United States v. Cody, 7 F.3d 1523, 1527 (10th Cir.1993). In making its calculation "[a] sentencing court may consider any reliable source of information that has some minimum indicia of reliability." Id.

The district court calculated Haley's base offense level to be 18, as established under U.S.S.G. § 2D1.1(c)(11) (trafficking involving 20 to 40 grams of methamphetamine). Haley admits that the 6.9 grams purchased by Thomasson during the transaction that Haley assisted were properly used to calculate his sentence, but argues that it was error for the district court to consider as relevant an additional 21 uncharged grams of methamphetamine that co-defendant Coleman testified he fronted to Haley to sell over a two-week period prior to the November 30 transaction with Thomasson for which Haley was convicted. Haley does not dispute that he received the 21 grams of methamphetamine, but insists that the Government failed to prove that he ever intended to sell, or that he did in fact sell, the 21 grams of methamphetamine in question. Haley claims that because he could only have been charged for possession, not aiding and abetting distribution, of those 21 grams, that quantity of methamphetamine cannot be considered relevant conduct under the Guidelines. See U.S.S.G. § 1B1.3(a)(2); § 3D1.2(d); United States v. Taylor, 97 F.3d 1360, 1363 (10th Cir. 1996).

Haley does not assert that he in fact used all 21 grams personally, nor does he offer any corroborating evidence of what became of the 21 grams of

methamphetamine at issue. Instead, Haley claims that the Government failed to meet its burden of proof that he obtained the 21 grams during the two-week period prior to November 30 for the purpose of distributing it. However, the Government presented a plethora of evidence that he did. Coleman testified that during that period he repeatedly entrusted Haley with quantities of methamphetamine in small retail-sized packages to sell for Coleman. Coleman's drug ledgers substantiate the amounts fronted to Haley during that period, as well as showing that Haley made partial payments on the drugs fronted by Coleman. Haley told others that was able and willing to sell methamphetamine. Brenda Baker, Coleman's girlfriend and fellow methamphetamine addict, testified that Haley might use between one-quarter to one-half a gram of methamphetamine per day. Thus, he might have consumed somewhere between four and seven grams within a two-week period. Given that Haley offered no proof of what happened to the 21 grams of methamphetamine he was fronted, the Government more than met its burden of providing the court with a preponderance of evidence that Haley obtained the additional 21 grams of methamphetamine from Coleman for the purpose of selling it. The district court found that Haley generally received methamphetamine from Coleman for the purpose of reselling it. The court did not err in considering this amount of methamphetamine to be relevant in determining Haley's base offense level.

Conclusion

For the reasons stated above Haley's conviction under 18 U.S.C. § 924(c) and the district court's calculation of Haley's base offense level are AFFIRMED.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge