The **STATE of Oklahoma, Appellant,**

v.

**Billie Jean STUART and Denzel Lee Vaughn, Appellees.**

**No. S–88–618.**

Court of Criminal Appeals of Oklahoma.

June 28, 1993.

As Corrected July 12, 1993.

---

**14.** See note 4, supra.

Lantz McClain, Dist. Atty. and Stanley L. Carver, First Asst. Dist. Atty., Sapulpa, for appellant.

W. Creekmore Wallace and Guy Fitzsimmons, Sapulpa, for appellees.

### OPINION

LUMPKIN, Presiding Judge:

Appellees Billie Jean Stuart and Denzel Lee Vaughn were charged with Unlawful Possession of Marijuana with Intent to Distribute in violation of 63 O.S.1981, § 2–401(B)(2), in the District Court of Creek County, Case No. CRF–88–39. A preliminary hearing was held for the Appellees before the Honorable Bill Wilson, Special Judge.

The State presented the testimony of two witnesses, Deputy Fugate and Officer Wall. Deputy Fugate, Creek County Sheriff's office, testified that he assisted officers of the Sapulpa Police Department on February 11, 1988, in executing a search warrant on the Appellee's home. The residence was located in a rural area, south of the city limits of Sapulpa, in Creek County. Quantities of marijuana, drug paraphernalia and cash were found inside the residence.

Officer Wall, Sapulpa Police Department, testified that he was the affiant on the search warrant. He stated that a few days prior to the issuance of the search warrant, he was informed by a confidential informant that the Appellees were selling marijuana from their residence. The informant led Officer Wall to Appellee's residence, located outside the city limits of Sapulpa. Officer Wall subsequently arranged for a controlled purchase of the marijuana to be made. Along with another city police officer, Officer Wall observed the confidential

informant enter the residence and exit shortly thereafter with a quantity of marijuana. This information was set forth in the affidavit for the search warrant and provided the probable cause for the issuance of the warrant. (O.R. 11)

Appellees moved to suppress all evidence seized pursuant to the search warrant and moved to quash the warrant alleging that it contained information gathered by Officer Wall while acting beyond his jurisdiction in conducting the controlled drug buy outside the limits of the city of Sapulpa. Judge Wilson granted the motion to suppress, finding that Officer Wall had exceeded his jurisdiction.

The State appealed the ruling pursuant to 22 O.S.Supp.1987, § 1089.1 *et seq.* The hearing was held on July 22, 1988, before the Honorable Billy L. Martin, Associate District Judge. Judge Martin affirmed the ruling of the magistrate and denied the State's appeal, finding that the "Sapulpa police officers in conducting a controlled purchase of drugs at a house located outside the city limits, accompanied by an informant who made the actual buy, were exercising the special powers of their office, and were therefore outside of their jurisdiction." (O.R. 32) It is this ruling which the State now appeals.

At the preliminary hearing, and now on appeal, the State argued that the police officers were not exercising the special powers of their office, but were merely acting as private citizens. In support of this argument, the State directs us to *Guthrie v. State,* 668 P.2d 1147 (Okl.Cr. 1983), and *Meadows v. State,* 655 P.2d 556 (Okl.Cr.1982).

In *Guthrie,* a Muskogee city police officer met with a confidential informant at the property subjected later to search. The property was located outside the city limits of Muskogee. The officer was unable to see anything from the roadway due to darkness. However, he recorded the defendant's name from the mail box on the property. This information was later contained in the affidavit for the search warrant.

In finding that the affidavit was not fatally defective for containing this information we stated:

> We have recognized the general rule that a police officer's authority cannot extend beyond his jurisdiction, i.e., the city limits of his employer. *See Graham v. State,* 560 P.2d 200, 203 (Okl.Cr.1977). Outside the geographical limits of the officer's authority, he acts as a private person, absent some established exception to the rule, such a fresh pursuit of an escapee. (cite omitted).
>
> However, in the case at bar, the officer did not attempt to exercise any of the special powers of his office while visiting the property, and his actions were consonant with his status as a private person. 668 P.2d at 1148.

In *Meadows,* a Mustang city police officer was working undercover on a narcotics case which originated out of Canadian County. The officer was acting under directions to pursue the case no matter where it ultimately led. The officer convinced the suspect that he needed to purchase some marijuana. Unaware of the officer's true identity, the suspect drove the officer to an apartment in Oklahoma City. There, the officer was introduced to the defendant who ultimately sold the marijuana to the officer. The officer made three separate purchases of narcotics on three separate dates from the defendant. Based upon information gathered by the officer, an arrest warrant was issued out of Oklahoma County for the defendant.

We held that the defendant's arrest was lawful based upon information supplied by the officer as the officer was properly investigating illegal drug activities that were brought to his attention while he was acting within his jurisdiction. We further stated:

> Here, we find that Officer Thompson was acting as a private citizen. During the entire drug investigation Officer Thompson was not acting under color of law. He did not hold himself out as a police officer. At no time did any of the participants know Thompson's official identity. (cite omitted) Thompson's activ-

ities were no different from what a private citizen could have done had he been informed of possible illegal drug activities. Thompson, while acting as a private citizen, investigated the source of the drug distribution and informed the local law enforcement authorities about criminal activities. 655 P.2d at 557.

The State concludes that no special power was exercised by the officers in the present case as "no guns were drawn, no badges were shown, no sirens or flashing red lights were turned on, and no one was coerced to act because of an awareness of police presence." The officers did no more than merely observe a drug transaction.

■ We disagree with the State's conclusions and find that they have not properly characterized the officers' conduct in the situation. The evidence shows that Officer Wall did more than merely observe the transaction, he organized and conducted the controlled purchase of marijuana. Upon receiving information about the Appellees from the confidential informant, Wall conducted a search of the informant, to make sure he had no money or controlled substances on him, for four (4) days prior to the controlled buy. For the same reason, Wall also searched the informants car. Wall gave the informant money to purchase the marijuana. Accompanied by Detective Sergeant Green, Officer Wall observed the informant drive to Appellees' residence, exit his car, walk to the front door, gain entry, and exit shortly thereafter. Meeting the informant nearby, Wall searched the informant and found the money he had given him was gone and that the informant had in his possession a quantity of marijuana. The informant told Wall that he had purchased the marijuana at the Appellees' and was told to return for future purchases.

Walls' active role in arranging and monitoring a controlled purchase of narcotics outside his jurisdiction, a transaction which from its inception was outside his jurisdiction, is clearly distinguishable from merely recording the suspect's name from his mailbox or participating in an ongoing investigation which was begun within the officer's jurisdiction.

The "special powers" of a police officer are not specifically defined by statute or case law. The powers of law enforcement personnel to enforce and administer the provisions of the Uniform Controlled Dangerous Substances Act, 63 O.S.1981, § 2–101, *et seq.* are set forth in 63 O.S.1981, § 2–501. This section states:

Any peace officer may:

1. Carry firearms;

2. Execute search warrants, arrest warrants, subpoenas, and summonses issued under the authority of this state;

3. Make an arrest without warrant of any person he had probable cause for believing has committed any felony under this act or a violation of Section 2–402;

4. Make seizures of property pursuant to the provisions of this act; and

5. Perform such other lawful duties as required to carry out the provisions of this act.

■ While not specifically listed, the ability to make a controlled purchase of narcotics certainly falls under the last section.

■ Further, such conduct by a private citizen is strictly prohibited. Title 63 O.S. 1981, §§ 2–401, 2–402, 2–408, specifically prohibits any person from possessing and/or purchasing and the attempt or offer to purchase or possess a controlled substance, such as marijuana. This is true even if the ultimate goal is to turn the evidence over to law enforcement authorities.

The Sapulpa city police officers in this case were acting outside their jurisdiction, and as such, outside the scope of their authority. They should have notified the Sheriff's Office of Creek County, or any other law enforcement agency having jurisdiction outside the city limits, to conduct the controlled purchase of narcotics. This practice is not only required by the above citations of authority, but also ensures proper coordination between law enforce-

ment agencies and protection of the offices involved in the investigations.

To the extent that *Meadows* is in conflict with the pertinent provisions of the Uniform Controlled Dangerous Substances Act and the holding in this case, it is hereby overruled.

Accordingly, we find that the affidavit for the search warrant was fatally defective because the evidence supporting it was obtained by officers exercising the powers of their office outside their jurisdiction and that the magistrate properly sustained the Appellee's motions to quash the search warrant. The record in this case is consistent with the magistrate's order and the District Court's affirmance of the order. Therefore, we affirm the magistrate's order.

JOHNSON, V.P.J., and LANE and CHAPEL, JJ., concur.