953 P.2d 999

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Sherrie L. PHELPS, Defendant–Appellant.**

No. 23072.

Court of Appeals of Idaho.

Feb. 25, 1998.

Alan E. Trimming, Ada County Public Defender, David J. Smethers, Deputy Public Defender, Boise, for defendant-appellant. David J. Smethers argued.

Alan G. Lance, Attorney General, Kenneth W. Robins, Deputy Attorney General, Boise, for plaintiff-respondent. Kenneth W. Robins argued.

Before LANSING, C.J., PERRY, J., and WALTERS, Acting J.

PER CURIAM.

Sherrie L. Phelps entered a conditional plea of guilty to one count of delivery of a controlled substance. Pursuant to a plea agreement under Idaho Criminal Rule 11, she appeals from the order denying her motion to dismiss the charging information. We affirm.

## BACKGROUND

On June 1, 1995, a confidential informant purchased methamphetamine from Phelps in a controlled buy set up by two officers of the Boise City Police Department. The drug transaction took place at Phelps' residence located in Garden City, after which the officers sought and obtained an arrest warrant from an Ada County magistrate.[1] Phelps was arrested November 1, 1995, on a charge of delivery of a controlled substance in violation of Idaho Code § 37–2732(a).

Officer Tony Taylor and the confidential informant (CI) who had purchased the drugs from Phelps testified at the preliminary hearing before the magistrate. At the conclusion of the preliminary hearing, counsel for Phelps moved to dismiss the complaint, arguing that the Boise City police officers

---

1. Both Boise and Garden City are located in Ada County.

had no authority to arrange and conduct a controlled drug buy in Garden City, which is outside of the Boise City limits. Upon the State's written response to the motion, the magistrate ruled that the evidence presented at the preliminary hearing supported a finding of probable cause and that Phelps should be held to answer in the district court. Phelps was then bound over to the district court where she moved to dismiss the information, and submitted a transcript of the preliminary hearing for the district court to consider in conjunction with the motion. Phelps asserted in her motion that the evidence presented at the preliminary hearing proceedings "failed to establish that there was reasonable or probable cause to believe that the Defendant committed the crime for which [s]he was held to answer...."

The motion was heard on May 17, 1996. On the date set for trial, May 21, 1996, the district court ruled on the motion. The district court found that although the Boise City narcotics officers were not authorized to exercise police powers outside of Boise, "they could investigate as private citizens." The district court concluded that the prosecution should proceed and denied the motion to dismiss. The district court then accepted Phelps' Rule 11 plea of guilty in which the parties agreed that Phelps should be allowed to appeal from the adverse ruling of the district court on the motion to dismiss. From the judgment of conviction entered June 27, 1996, Phelps appealed.

### ISSUES

Phelps challenges the magistrate's decision to bind her over to the district court, thereby denying her motion to dismiss the complaint. Phelps asserts that the magistrate's commitment was not based on probable cause as required by I.C. § 19–815A,[2] which Phelps claims was the basis for her motion. As a

result, Phelps contends that the district court erred in denying the motion to dismiss the information.

### STANDARD OF REVIEW

A magistrate's commitment will not be deemed an abuse of discretion, and, therefore, a district judge's denial of a motion challenging probable cause will not be disturbed on appeal, if under any reasonable view of the evidence, including permissible inferences, it appears likely that an offense occurred and that the accused committed it. *State v. Williams,* 103 Idaho 635, 651 P.2d 569 (Ct.App.1982), *overruled on other grounds, State v. Pierce,* 107 Idaho 96, 685 P.2d 837 (1984). The finding of probable cause must be based upon substantial evidence upon every material element of the offense charged. I.C.R. 5.1(b); *State v. Munhall,* 118 Idaho 602, 606, 798 P.2d 61, 65 (Ct.App.1990). The standards appropriate to a preliminary hearing, however, do not require the state to prove the element beyond a reasonable doubt. *Id.*

### ANALYSIS

The CI testified at the preliminary hearing that, on June 1, 1995, he obtained several small bags containing methamphetamine from Phelps in exchange for $175. The CI had received the purchase money of $180 from the Boise City officers, who searched the CI and surveilled his actions immediately before and after the delivery of the drugs, and to whom the CI returned $5.00 not used in the transaction. As testified by Officer Taylor, this information regarding the controlled buy was conveyed by the officers to a magistrate who issued a warrant to arrest Phelps for delivery of a controlled substance on August 15, 1995.

2. I.C. § 19–815A reads as follows:
    A defendant once held to answer to a criminal charge under this chapter may challenge the sufficiency of the evidence educed at the preliminary examination by a motion to dismiss the commitment, signed by the magistrate, or the information filed by the prosecuting attorney. Such motion to dismiss shall be heard by a district judge.

If the district judge finds that the magistrate has held the defendant to answer without reasonable or probable cause to believe that the defendant has committed the crime for which he was held to answer, or finds that no public offense has been committed, he shall dismiss the complaint, commitment or information and order the defendant discharged.

The arrest warrant, however, was not served on Phelps until November 1, 1995.[3]

We conclude that the evidence presented by the State at the preliminary hearing showed that Phelps had made a transfer of a substance which was proven to be an illegal drug. Accordingly, we conclude that the magistrate did not abuse his discretion by holding Phelps to answer at trial on the charge of delivery of a controlled substance.

Next, Phelps disputes the findings of the district court holding that the Boise City officers acted outside their jurisdiction in the investigation and conduct of a controlled buy at a Garden City residence, but that the officers could legally carry out such activities in their capacity as private citizens. Phelps argues, therefore, that because the evidence supporting the probable cause finding was derived from the extraterritorial activities of the officers, the charges in the information should have been dismissed.

■ The State concedes that the officers' actions in Garden City were conducted outside of their jurisdiction and do not qualify under the fresh pursuit exception extending the jurisdictional limits of the police authority under I.C. § 67–2337. The State maintains, however, that irrespective of the district court's finding that the officers were authorized to investigate drug activity as private citizens, the district court correctly refused to dismiss the information. The State points out that Phelps has failed to cite any authority holding that dismissal is an appropriate remedy for extraterritorial activities of the police.

The district court relied on *Meadows v. State*, 655 P.2d 556 (Okl.Crim.App.1983), in finding that the extraterritorial investigation was authorized in the officers' capacity as private citizens. In *Meadows*, an undercover officer acting beyond the jurisdictional limits of his police powers was found to be operating as a private citizen, and not holding himself out as a police officer, in investigating drug-related activities and informing the local law enforcement authorities about those activities. *Id.* However, the reasoning in *Meadows* was subsequently overturned by *State v. Stuart*, 855 P.2d 1070 (Okl.Cr.1993). *Stuart* held that the active role of the police in conducting the controlled purchase of marijuana, which conduct is prohibited by a private citizen, is one of the "special powers" granted to police officers to enforce and administer the provisions of the Uniform Controlled Dangerous Substances Act, and as such, must be conducted within the scope of their territorial authority. *Id.* at 1073. The appellate court affirmed the suppression of the evidence obtained from the controlled buy and rendered invalid the officers' affidavit in support of the search warrant. *Id.*

Similarly, in *People v. Lahr*, 147 Ill.2d 379, 168 Ill.Dec. 139, 589 N.E.2d 539 (1992), the use of a radar gun to gather evidence was found to be limited to police officers and therefore an assertion of police authority. As such the radar gun monitoring, which was exercised beyond the territorial limits of the officer's jurisdiction, was held to taint and thus invalidate a later warrantless arrest. *Id.*

Here, however, Phelps made no motion to suppress the evidence [4] derived from the con-

---

**3.** Phelps has not attacked the validity of the arrest warrant. Under Idaho Criminal Rule 4(a), the magistrate may issue a warrant for the arrest of the defendant only after making a determination that there is probable cause to believe that an offense has been committed and that the defendant committed it.

The invalidity of a given arrest, even if establishable, may not suffice to defeat a prosecution where there is sufficient evidence of the offense independent of the arrest. *Darby v. State*, 502 So.2d 1358 (Fla.App.1987). *See also State v. E.T.*, 560 So.2d 1282 (Fla.App.1990) (holding that there is no authority for a trial court to dismiss an indictment, information, complaint affidavit, traffic summons, or delinquency peti-

tion on the ground that the subject accusatory pleading emanated from or was based upon an illegal arrest of the accused defendant or juvenile. The underlying rationale for restraining a court from going behind the charging document is that the decision whether to prosecute a person for a criminal offense traditionally has been purely an executive function and for the courts to venture into those waters would interfere with the prosecuting authorities and severely compromise the judicial role as impartial arbiters).

**4.** *See State v. Benefiel*, 131 Idaho 226, 953 P.2d 976 (1998) (evidence obtained by law enforcement officer conducting investigation outside of his territorial jurisdiction did not violate defen-

trolled buy, which was arranged with the CI and directed by the Boise police officers. We have not been asked to adopt the rationale of *Stuart, supra,* and extend it to invalidate the officer's testimony presented in support of obtaining the arrest warrant.[5] Nor was Phelps subjected to a warrantless arrest based on illegal, extraterritorial activities of the police, as in *Lahr, supra.*

We need not decide whether the direction and management of a controlled buy through a CI is exclusively a police activity, which must be conducted within their authority under I.C. § 67–2337.[6] Thus, the issue, correctly framed, is whether there is authority for the trial court to dismiss the prosecution against the defendant because the officers were acting beyond their "power and authority" under I.C. § 67–2337 at the time the CI purchased illegal drugs from Phelps. *See People v. Meyer,* 424 Mich. 143, 379 N.W.2d 59 (1985).

In *Meyer,* the court determined that it was unnecessary to decide whether the participation of an undercover officer in an illegal drug transaction violated the statute that reposes limited authority in police officers to act outside their own bailiwick. *Id.,* 379 N.W.2d at 65. The court considered instead the propriety of the officer swearing to and filing a complaint against the defendant and giving evidence in the matter at a subsequently scheduled preliminary examination,

finding no constitutional, statutory, or other authority that would disqualify such actions by an undercover officer. *Id.* Recognizing that extraterritorial activities may subject the officer to official sanction, civil and possible criminal liability, the court concluded that the defendant was not entitled to dismissal of the criminal charges against him. *Id.,* 379 N.W.2d at 68. *See also State v. Filoso,* 613 So.2d 69 (Fla.App.1993) (reinstating charges against a defendant, finding no prejudice to the defendant and no basis for dismissal of the charges stemming from a breach of a mutual aid law enforcement agreement).

Accordingly, we reject dismissal of a charge as the appropriate remedy when an officer acts outside of his jurisdiction in obtaining evidence of a drug transaction which formed the basis of the offense charged against the defendant and led to the issuance of the arrest warrant in the case. We uphold the order denying Phelps' motion to dismiss the information in this case.

The judgment of conviction for delivery of a controlled substance is therefore affirmed.

---

dant's constitutional rights and would not be suppressed).

5. The provisions of the Uniform Controlled Substances Act adopted in Idaho, specifically I.C. § 37–2740, are nearly identical to the Oklahoma statute cited by the *Stuart* court.

6. Idaho Code § 67–2337 provides in pertinent part:

(2) All authority that applies to peace officers when performing their assigned functions and duties within the territorial limits of the respective city or political subdivisions, where they are employed, shall apply to them outside such territorial limits to the same degree and

extent only when any one (1) of the following conditions exist:

(a) A request for law enforcement assistance is made by a law enforcement agency of said jurisdiction.

(b) The peace officer possesses probable cause to believe a crime is occurring involving a felony or an immediate threat of serious bodily injury or death to any person.

(c) When a peace officer is in fresh pursuit as defined in and pursuant to chapter 7, title 19, Idaho Code.

(3) Subsection (2) of this section shall not imply that peace officers may routinely perform their law enforcement duties outside their jurisdiction in the course and scope of their employment.