85 P.3d 1125

### Chad W. LAUGHLIN, Petitioner–Appellant,

v.

### STATE of Idaho, Respondent.

### No. 28830.

Court of Appeals of Idaho.

Nov. 25, 2003.

Review Denied March 17, 2004.

Molly J. Huskey, State Appellate Public Defender; Charles Isaac Wadams, Deputy Appellate Public Defender, Boise, for appellant. Charles Isaac Wadams argued.

Hon. Lawrence G. Wasden, Attorney General; Ralph Reed Blount, Deputy Attorney General, Boise, for respondent. Ralph Reed Blount argued.

GUTIERREZ, Judge.

Chad W. Laughlin appeals from denial of his post-conviction relief application. After a hearing, the district court found that Laughlin's trial counsel was not ineffective in failing to raise in a motion to suppress evidence the issue of the extraterritorial arrest. We affirm.

### I.

### FACTUAL AND PROCEDURAL HISTORY

In December, 1997, law enforcement officers in Jerome County received a complaint involving burglary of an automobile. A purse containing checks and credit cards had been stolen from the vehicle. The victim reported the stolen cards to the credit card companies, and was told that one of the cards had been used at a truck stop in Jerome County, not far from the location of the theft. A few days later, James Dotson was arrested in Twin Falls County on an outstanding warrant. Checks belonging to the victim of the automobile burglary were found in Dotson's possession.

Jerome County Sheriff Detective Daniel Chatterton was contacted by Twin Falls authorities. Chatterton thereafter interviewed Dotson at the Twin Falls County jail, where

Dotson told officers that Laughlin had used the credit card at the truck stop. Chatterton performed further investigation of the burglary in Twin Falls County, without the knowledge or permission of any law enforcement agency in Twin Falls County. Specifically, Chatterton spoke with the manager of the Monterey Motel which is located in Twin Falls County. The manager informed Chatterton that the individual he was looking for was staying at the El Rancho Motel, just across the street. A vehicle matching the vehicle Laughlin was believed to drive was in the parking lot of the El Rancho. Chatterton met with the manager of the El Rancho and the manager stated that Laughlin was in room 8.

Chatterton, dressed in civilian clothes, outside his jurisdiction, and without assistance or permission from local law enforcement, went to room 8 and knocked. The door was answered by a man who matched the description of Laughlin. Chatterton arrested Laughlin at that time. At some point Laughlin was advised of his *Miranda*[1] rights and subsequently admitted he had used the card at the truck stop and had the victim's checks in his room. A search warrant was obtained for Laughlin's motel room and vehicle, and the stolen credit cards and checks were recovered. Additionally, evidence implicating Laughlin in other burglaries was also obtained.

Laughlin was charged with several crimes. Laughlin filed a pro se motion to suppress evidence found in the motel room and vehicle, arguing that Chatterton was not authorized to execute a search warrant in Twin Falls County, outside his jurisdiction. After a hearing, the district court denied this motion, on three grounds: (1) the Exclusionary Rule was not a proper remedy because Laughlin's substantial rights had not been affected; (2) any taint from an illegal arrest was cured by Chatterton obtaining a search warrant based, in part, on incriminating statements made after *Miranda* warnings

had been given; and (3) Chatterton could have made a citizen's arrest pursuant to I.C. § 19–604. Laughlin entered guilty pleas to two counts of burglary, I.C. § 18–1401, and several misdemeanors, reserving the right to appeal the denial of his motion to suppress evidence. This Court affirmed the denial of the suppression motion in an unpublished opinion, *State v. Laughlin*, 135 Idaho 164, 15 P.3d 1172, Docket No. 25027/25028 (Ct.App. August 11, 2000). Laughlin filed a pro se application for post-conviction relief on August 13, 2001, alleging that his trial counsel provided ineffective assistance in failing to include in the motion to suppress evidence the issue of the extraterritorial arrest.[2] The district court denied the application after a hearing. Laughlin appeals.

## II.

## ANALYSIS

Laughlin argues that: (1) Chatterton had no authority to make a citizen's arrest pursuant to I.C. § 19–604 because he was acting as a police officer at the time of the arrest; and (2) Chatterton had no power to make a citizen's arrest pursuant to I.C. § 19–604 because the information Chatterton possessed was obtained through police methods, rather than as a private person. Because Chatterton had no authority to make an arrest of Laughlin, the evidence gained from the arrest was subject to the exclusionary rule and required suppression. Laughlin contends that, without such evidence, he would not have been convicted and therefore, trial counsel was ineffective in not raising this issue at the suppression hearing.

In order to prevail in a post-conviction proceeding, the applicant must prove the allegations by a preponderance of the evidence. I.C. § 19–4907; *Stuart v. State*, 118 Idaho 865, 801 P.2d 1216 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Laughlin joined with the arrest issue concerns about the extraterritorial investigation performed by Deputy Chatterton. Nothing in the record indicates that Chatterton used his position as a

Jerome County Deputy in furtherance of his investigation when interviewing private parties in Twin Falls County. Consequently, this Court focuses on the extraterritorial arrest, and not on the investigation.

will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State,* 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State,* 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct.App.1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State,* 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct.App.1992).

A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray v. State,* 121 Idaho 918, 924–25, 828 P.2d 1323, 1329–30 (Ct.App.1992). The relevant rules are laid out in *State v. Mathews,* 133 Idaho 300, 986 P.2d 323 (1999):

> The benchmark for judging a claim of ineffective assistance of counsel is *"whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."* *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–93 (1984). The test for evaluating whether a criminal defendant has received the effective assistance of counsel is the two prong test found in *Strickland. See id.* Under this test, a petitioner must show both that: 1) his counsel's conduct was deficient because it fell outside the wide range of professional norms, and 2) the petitioner was prejudiced as a result of that deficient conduct. *See id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Under the Idaho Constitution, Idaho courts employ the same two-part test in assuring that a defendant receive *"reasonably competent assistance of counsel."* *Aragon v. State,* 114 Idaho 758, 761, 760 P.2d 1174, 1177 (1988) (quoting *Gibson v. State,* 110 Idaho 631, 635, 718 P.2d 283, 287 (1986)); *see also Carter v. State,* 108 Idaho 788, 794, 702 P.2d 826, 832 (1985).

> ....

In evaluating defense counsel's actions under the *Strickland* standard, we first address whether counsel's performance was deficient. To satisfy the deficient performance prong, *the defendant is required to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."* *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Simply stated, the standard for evaluating attorney performance is objective reasonableness under prevailing professional norms. *See id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; *Aragon,* 114 Idaho at 762, 760 P.2d at 1178; *see also McMann v. Richardson,* 397 U.S. 759, 770–71, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763, 773 (1970) (stating that a guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not "a reasonably competent attorney" and the advice was not "within the range of competence demanded of attorneys in criminal cases").

In assessing the reasonableness of attorney performance, *judicial scrutiny must be highly deferential* and every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; *see Aragon,* 114 Idaho at 760, 760 P.2d at 1176. The defendant making a claim of ineffective assistance is required to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695; *Aragon,* 114 Idaho at 760, 760 P.2d at 1176. Moreover, "the court should recognize that *counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."* *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695.

*Mathews,* 133 Idaho at 306–07, 986 P.2d at 329–330 (emphasis added). This Court has long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law or other shortcomings capable of objective evaluation. *Howard v. State,* 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct.App.1994).

Laughlin's argument is premised on a finding that the arrest was illegal, therefore the exclusionary rule would apply to require suppression of evidence. Idaho Code § 67–2337 governs the authority of a police officer when he is outside his jurisdiction. Parts (2) and (3) of this statute state:

(2) All authority that applies to peace officers when performing their assigned functions and duties within the territorial limits of the respective city or political subdivisions, where they are employed, shall apply to them outside such territorial limits to the same degree and extent only when any one (1) of the following conditions exist:

(a) A request for law enforcement assistance is made by a law enforcement agency of said jurisdiction.

(b) The peace officer possesses probable cause to believe a crime is occurring involving a felony or an immediate threat of serious bodily injury or death to any person.

(c) When a peace officer is in fresh pursuit as defined in and pursuant to chapter 7, title 19, Idaho Code.

(3) Subsection (2) of this section shall not imply that peace officers may routinely perform their law enforcement duties outside their jurisdiction in the course and scope of their employment.

The district court found that Chatterton was acting outside his jurisdiction and did not have extraterritorial authority pursuant to any exception in I.C. § 67–2337 when executing the arrest.

However, Idaho Code § 19–604 provides that:

A private person may arrest another:

1. For a public offense committed or attempted in his presence.

2. When the person arrested has committed a felony, although not in his presence.

3. When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it.

Laughlin's trial counsel testified at the evidentiary hearing held pursuant to the instant post-conviction application for relief. Counsel stated that the extraterritorial arrest issue was, initially, a strong one. However, trial counsel's evaluation of Laughlin's case indicated that the execution of the search warrant was a stronger issue. Counsel considered that execution of a search warrant was a direct exercise of police power outside the officer's jurisdiction, while the arrest was not a clear exercise of police power. Counsel also considered that the arrest issue implicated a private citizen's ability to investigate crime and arrest a suspect. Additionally, trial counsel testified she was not able to determine with absolute certainty who actually arrested Laughlin, although this issue weighed less than the legal issues governing the arrest.[3] Counsel testified she had researched the extraterritorial arrest issue, specifically I.C. § 67–2337, *State v, Goerig,* 121 Idaho 108, 822 P.2d 1005 (Ct.App.1991) (extraterritorial arrest was held valid where officer acted at the request of the chief law enforcement officer of the other political subdivision), and *State v. Benefiel,* 131 Idaho 226, 953 P.2d 976 (1998) (evidence obtained by officer conducting investigation outside of his territorial jurisdiction did not violate defendant's constitutional rights and would not be suppressed), in making her strategic decisions.

We observe that Idaho has no case law which holds that a police officer who is acting as a police officer at the time of the arrest

---

3. Laughlin notes that trial counsel was uncertain about whether Chatterton made the actual arrest, or whether an officer from Twin Falls County made the arrest. We conclude this is not rele-vant to our inquiry and not evidence of ineffective assistance, because trial counsel's investigation clearly contemplated attacking the arrest as if Chatterton was the arresting officer.

cannot make a citizen's arrest.[4] Case law from other states tends to show that the majority rule is contrary to Laughlin's argument. *See State v. McCullar*, 110 Ariz. 427, 520 P.2d 299 (1974); *People v. Bloom*, 195 Colo. 246, 577 P.2d 288 (1978); *State v. Miller*, 257 Kan. 844, 896 P.2d 1069 (1995); *Molan v. State*, 614 P.2d 79 (Okla.Crim.App. 1980); *State v. Harp*, 13 Wash.App. 239, 534 P.2d 842 (1975); Russell G. Donaldson, Annotation, *Validity, in State Criminal Trial, of Arrest Without Warrant by Identified Peace Officer Outside of Jurisdiction, When Not in Fresh Pursuit*, 34 A.L.R.4th 328 (1984).

As stated before, tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law or other shortcomings capable of objective evaluation. *Howard*, 126 Idaho at 233, 880 P.2d at 263. We note that this is not a case where an attorney failed to challenge the state's evidence through a suppression motion. Trial counsel filed a suppression motion, but Laughlin claims the motion should have been broader, to include the issue of extraterritorial arrest. The record indicates that trial counsel investigated the issue of the extraterritorial arrest, including determining the relevant statutes and researching significant case law. However, she determined the arrest issue was not as pivotal as the search warrant issue.

We emphasize that the right to counsel is the right to "reasonably competent assistance of counsel." *Aragon v. State*, 114 Idaho 758, 761, 760 P.2d 1174, 1177 (1988) (quoting *Gibson v. State*, 110 Idaho 631, 635, 718 P.2d 283, 287 (1986)). Additionally, we acknowledge that judicial scrutiny into the effectiveness of representation must be "highly deferential" and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052. Where a defendant makes a claim of ineffective assistance of counsel in post-

conviction proceedings, and where the claim relates to a subject which falls under the category of tactical or strategic decisions of trial counsel, a heavy burden of proof is imposed upon the defendant. Effective assistance of counsel does not require perfect assistance of counsel.

> If there is more than one plausible line of defense ... counsel should ideally investigate each line substantially before making a strategic choice about which lines to rely on at trial. If counsel conducts such substantial investigations, the strategic choices made as a result "will seldom if ever" be found wanting. Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment.

*Strickland*, 466 U.S. at 681, 104 S.Ct. at 2061, 80 L.Ed.2d at 689 (citation omitted).

Given the investigation performed by trial counsel, the state of Idaho law governing the arrest at issue here, and the state of the law in other jurisdictions, we cannot hold that trial counsel's performance constituted ineffective assistance of counsel. Because Laughlin has failed to satisfy the first prong of the *Strickland* test, Laughlin has failed to show that his trial counsel was ineffective in her representation.

## III.

## CONCLUSION

Laughlin's trial counsel was aware of the possible issue, investigated the relevant law, and made a tactical or strategic decision to pursue other issues deemed more pivotal to Laughlin's case. Laughlin has failed to meet the burden of proof imposed upon him to show that this tactical or strategic decision of counsel fell outside the provision of "reasonably competent assistance of counsel." Accordingly, we affirm the district court's order

---

**4.** In *State v. Phelps*, 131 Idaho 249, 953 P.2d 999 (Ct.App.1998), defendant charged with delivery of a controlled substance, based on controlled buy set up by police officers out of their jurisdiction, was not entitled to have charge dismissed, where defendant did not move to suppress evidence, and was not subjected to warrantless arrest based on illegal, extraterritorial activities of police.

dismissing Laughlin's application for post-conviction relief.

Judge PERRY concurs in the result.

Judge Pro Tem SCHWARTZMAN specially concurs.

> 'Between the idea
>
> And the reality
>
> Between the motion
>
> And the act
>
> Falls the Shadow'

I quote from T.S. Eliot's poem *The Hollow Men* to give point to the assertion that *effective* assistance of counsel does not require *perfect* assistance of counsel. Between the idea—a constitutional right to counsel—and the reality—a public defender; between the motion—preparing a defense—and the act—the implementation thereof in court—falls the shadow—judicial scrutiny of counsel's constitutionally mandated performance.

In an age when high-profile criminal trials dominate the news and become a communal media event, taking on a life of their own—I only need allude to O.J. or Kobe—the public is regaled with a skewed vision of our criminal justice system: a scorched earth policy of no holds barred, no quarter asked, no quarter given; an adversarial mentality where literally everything is contested and litigated at the highest level. If this is the norm by which all defense counsel must be evaluated, then our system would surely implode.

In such a venue or theater, trial counsel would indeed be derelict in not fully pursuing all aspects of Laughlin's arrest and the subsequent accumulation of state's evidence to be used against him. After all, what has counsel got to lose? But here the benchmark is "objective reasonableness under prevailing professional norms." Where the law is, at best, ambiguous, esoteric and unsettled, and where defendant's claim is, at most, arguably plausible, I would *not* hold that counsel's failure to rigorously pursue the issue now under judicial scrutiny undermined the

proper functioning of the adversarial process or that counsel made an error so serious that (s)he was not functioning within the guarantee of the Sixth Amendment.

Accordingly, I concur in the opinion of this Court. As such, we need not address the substantive issue related to Laughlin's extraterritorial arrest.[1]

---

1. If it is of any consolation to defendant, I would have been inclined to rule that his arrest was "legal" to begin with pursuant to I.C. § 67-2337(2)(b)—i.e. the officer possesses probable cause to believe a crime is occurring involving a felony.